IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LISA JANE GRAHAM,            )
                             )
              Plaintiff,     )
                             )
    vs.                      )   No. 05-3397-JTM
                             )
NATHAN VAN DYCKE, et al.,    )
                             )
              Defendants.    )
_____)

**MEMORANDUM AND ORDER**

This matter comes before the court on defendants Lori Meiers, Steve McClennahan and Mike Pringle's motion for summary judgment. (Dkt. No. 68). The other defendants in the case previously filed a motion to dismiss (Dkt. No. 58), which this court granted (Dkt. No. 70 [sealed]). As such, the current defendants are the only ones remaining in the case. For the following reasons, the court grants the motion.

Also pending before the court are Plaintiff Lisa Graham's motions (1) for certification or for revision of action (Dkt. No. 79), (2) for certification or for revision of action and summary judgment (Dkt. No. 81), and (3) for default judgment (Dkt. No. 84). For the following reasons, the court denies those motions.

**I. Defendants' Motion for Summary Judgment**

**1. Facts**

The following facts were set forth in the defendants' motion for summary judgment. Ms. Graham's response failed to comply with the provisions of local rule 56.1, which provides that

all material facts set forth in the movant's statement of facts shall be deemed admitted unless specifically controverted by the opposing party.  Although great deference is often given to pro se litigants, such litigants are nevertheless governed by the same procedural rules as other litigants; thus, on summary judgment, this Court will accept as true facts which the pro se litigant does not controvert.  *See Ross v. Donley*, No. 07-3066, 2008 WL 640765 (D. Kan. Mar. 6, 2008); *Ellibee v. Hazlett*, No. 03-3023, 2006 WL 3050801, at *2 (D. Kan. Oct. 23, 2006).

Ms. Graham is a pro se litigant pursuing a § 1983 action against members of the Topeka Correctional Facility.  Defendants Dr. Meiers, McClennahan and Pringle are health care providers employed by Correct Care Solutions (CCS), a company that contracts with the Kansas Department of Corrections (KDOC) to provide medical services to inmates.

On June 10, 2005, Ms. Graham was in the custody of the KDOC at the Topeka Correctional Facility.  Ms. Graham was seen in the prison clinic by Dr. Meiers, a psychologist, in response to a referral by security reporting that Ms. Graham was demanding pyschotropic drugs Haldol and Ativan, and was extremely agitated.  Ms. Graham initially would not meet with Dr. Meiers in the clinic and stated she was going to "kick somebody's ass."  Graham was asked to wait in the clinic waiting area, but she refused and went back to her room.  Dr. Meiers attempted to speak to her at her cell in general population, but Graham stated that she was going to "kick these motherfuckers ass" and refused to discuss why she was angry with the other inmates.

Dr. Meiers discussed with Ms. Graham that she could not allow her to harm others, and would thus need to be moved to another pod on crisis level placement until she no longer felt like harming anybody else.  Graham reminded Dr. Meiers of her crime of conviction, attempted murder, and stated that she would fight anyone trying to move her to another room.

Dr. Meiers decided to place Ms. Graham on crisis level, based on her history and her state of mind at the time.  Dr. Meiers was especially concerned that Ms. Graham might become violent because she would not discuss what was bothering her.  Dr. Meiers was also concerned because she knew that Ms. Graham had access to scissors and was worried that she might use them to harm herself or others.

Major Joseph Essman was the shift supervisor when Graham was placed on Crisis Level III by Dr. Meiers, and ordered a team to prepare for the forced cell extraction of Ms. Graham, who neither resisted nor cooperated with her move.  Due to the fact that there was a heavy concentration of inmates in crisis on June 10, 2005, and because five officers had called in sick on the shift, two officers were on leave, and one officer was in training, it was impractical and impossible to include a female officer on the planned force team that removed Ms. Graham from her cell.

At the time of Ms. Graham's placement in Crisis Level III, she was ordered to wear a "suicide gown" made of paper.  The defendants state that removal of Ms. Graham's clothing was necessary to prevent her from harming herself.  Further, although the removal of clothing was called a strip search at the time, it was not conducted as a strip search and did not follow the procedures for a strip search.

On June 13, 2005, Ms. Graham was reduced to mental health Crisis Level II, and Dr. Meiers allowed her to utilize her hygiene items under supervision.  Ms. Graham uses a straight catheter to relieve her urinary retention, as needed.

After this incident, Ms. Graham brought the current action under 42 U.S.C. § 1983, as well as allegations that her Eighth Amendment Due Process Clause rights were violated because

of a strip searched conducted by male guards, as well as her confinement in segregation for a few days due to a mental health crisis. Ms. Graham claims the search and segregation violated her right to privacy, and could have been avoided if appropriate medication had been provided. Ms. Graham states she sustained a wrist injury because excessive force was used, and claims she was denied a prescribed medical apparatus to help her expel waste. Ms. Graham also generally claims prison regulations were not followed and other prisoners were treated more favorably, and claims a television set placed in storage during her segregated confinement was damaged. For these alleged violations of her constitutional rights, Ms. Graham seeks damages and sanctions

## 2.  Legal Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is *genuine* if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003). A fact is *material* if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004); *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the nonmoving party's claim or

defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate* Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Finally, a court must construe pleadings by a pro se party liberally, but the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

### 3. Analysis

#### A. Eighth Amendment

Graham's removal from her cell and placement in administrative segregation did not constitute deliberate indifference and did not violate her Eighth Amendment rights.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with "deliberate indifference to serious medical needs of

prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" contains both objective and subjective components. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006). The objective component requires that the medical need be sufficiently serious, meaning that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The subjective component requires that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Nonetheless, disagreements with the treatment provided by prison medical staff, or the inadvertent or negligent failure to provide medical care are insufficient to show the deliberate indifference required for an Eighth Amendment violation. *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

Graham's behavior on June 10, 2005, coupled with her history of suicide threats, confirm the reasonableness of Dr. Meiers' decision to place Graham on crisis level. Graham had threatened suicide in the past. *See State v. Graham*, 277 Kan. 121, 125, 83 P.3d 143 (2004). On June 10, 2005, she became extremely agitated and demanded two psychotropic drugs. She threatened to harm other inmates and refused to discuss the reasons for her anger. Dr. Meiers knew that Graham had previously had a bad experience with Haldol, one of the two psychotropic drugs requested by Graham. Further, Dr. Meiers knew that Graham had access to scissors. Dr. Meiers was reasonably concerned that Graham might try to harm herself or others. The decision to remove Graham from her cell and place her in administrative segregation was a prudent

measure to protect Graham as well as her fellow inmates from harm. Dr. Meiers' decision did not amount to deliberate indifference.  As previously noted, an inmate's disagreement over the particular course of treatment she received does not amount to deliberate indifference. *Callahan*, 471 F.3d at 1160.

Graham's removal from her cell into administrative segregation was performed by officers of the Kansas Department of Corrections, not the three CCS employees named as defendants.  That removal, including the removal of her clothing, was done pursuant to established procedures and was videotaped. As with all inmates on suicide watch, clothing is removed so that the clothing does not become an instrument by which the inmate can injure herself, or hide a weapon that can be used to harm herself or others.

The use of male officers to remove Graham from the cell was prompted by staffing exigencies. There was a heavy concentration of inmates in crisis on June 10, 2005. In addition, five officers had called in sick for that shift, two officers were on leave, and one officer was in training. The staffing shortage rendered it impractical or impossible to include a female officer on the team that removed Ms. Graham.

Further, Ms. Graham was provided with her required medication and medical apparatus while in administrative segregation.  Ms. Graham was held in administrative segregation from June 10, 2005 through June 13, 2005.  Ms. Graham refused to accept her medications at 9:35 p.m. on June 10.  At 4:45 a.m. on June 11, she again refused her medications. At 10:03 p.m. on June 11, she accepted her medications from the nurse. At that time, she was given her medical kit, which included a catheter. Ms. Graham proceeded to use the catheter. In accordance with Dr. Meiers' order, Ms. Graham was not allowed to keep her personal hygiene items in her cell when

not using them. At 4:30 a.m. on June 12, Ms. Graham again accepted her medications from a nurse. At 11:10 that evening, Ms. Graham was given her medications by a nurse. On the following morning, June 13, she was given her medications by Nurse Russell at 4:45 a.m. Later that day, Dr. Meiers changed Ms. Graham's classification level to Crisis Level II. Accordingly, Ms. Graham's claim that she was denied either her medications or her catheter has no basis.

Additionally, Ms. Graham is not similarly situated to other inmates. Ms. Graham alleges her constitutional rights were violated because she was placed into administrative segregation, while similarly situated inmates were not. The Tenth Circuit rejected a similar claim in *Templeman v. Gunter*, 16 F.3d 367 (10th Cir. 1994), in which the court noted that a prisoner making such a claim must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. *Id*. at 371. The court observed that prison officials must weigh various criteria in making qualitative judgment about how to classify an individual inmate. Given that fact, the court stated that "it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect." *Id.* The court proceeded to characterize the plaintiff's claim that there were no relevant differences between the plaintiff and other inmates that accounted for their different treatment as "not plausible or arguable." *Id.* Ms. Graham cannot establish there are no relevant differences between herself and other inmates that account for their different treatment, and thus her claim must fail.

Additionally, Ms. Graham's state law claim is dismissed. Ms. Graham asserts a claim pursuant to K.S.A. 21-3425, which is a criminal statute. The State of Kansas prosecutes crime, not private individuals; as such, that claim is dismissed. *See* Kan. Stat. Ann. § 22-2104; *Alvarez-Flores v. Shelton*, No. 05-3261, 2007 WL 2461619, at *2 (D. Kan. Aug. 23, 2007).

## II. Other Motions

*A. Motions for Certification or for Revision of Action and Summary Judgment*

In this motion, Ms. Graham moves the court for an entry of final judgment, or for revision of the order granting defendants' motion to dismiss (Dkt. No. 58) pursuant to Fed. R. Civ. P. 54(b). After careful review of plaintiff's motion, it appears that Ms. Graham was upset that this court did not issue a final judgment after granting the defendants' motion to suppress. The reason, however, that no such order was issued is because the motion to dismiss concerned only some of the defendants in this case. However, now that the court has granted the motion for summary judgment in favor of the remaining defendants, a final order will be entered in this case. As such, Ms. Graham's motions for certification (Dkt. No. 79 and 81) are denied as moot.

*B. Motion for Order*

Finally, Ms. Graham filed a motion for default judgment on the ground that the court inexcusably delayed ruling on previous motions. Default judgment on such a basis is improper, and her motion is denied.

IT IS SO ORDERED this 10th day of July, 2008 that defendants McClennahan, Meiers, and Pringle's motion for summary judgment (Dkt. No. 68) is granted, plaintiff Graham's motions for certification of action or revision of action (Dkt. Nos. 79 & 81) are denied as moot, and plaintiff Graham's motion for order (Dkt No. 84) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE